**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN P. KILROY,**

      **Plaintiff,**

      **v.**

**JON HUSTED,**

      **Defendant.**

            **Case No. 2:11-cv-145**

            **JUDGE GREGORY L. FROST**

            **Magistrate Judge Terence P. Kemp**

## <u>OPINION AND ORDER</u>

Before this Court are Defendant Jon Husted's Motion for Summary Judgment (ECF No. 74), Plaintiff John P. Kilroy's Opposition to the Motion (ECF No. 83), and Husted's Reply Brief in Support of his Motion (ECF No. 90). Defendant Husted, the Ohio Secretary of State, moves for summary judgment solely on the ground that the Eleventh Amendment to the United States Constitution bars Plaintiff Kilroy's lawsuit. For the reasons set forth below, the Defendant's Motion is **GRANTED**.

## I. Background

Plaintiff Kilroy is an Ohio citizen who has been actively involved in political activity over the last 15 years. He owns 20 shares of stock in Target Corporation, which is a provider of Medicaid services in Ohio.

Over the last 10 years, Plaintiff has made more than 50 political campaign contributions to candidates for local, state, and federal office. (Pltf. Opp. to Mtn. for Summ. J., Ex. 13.) As pertinent to this case, Plaintiff has contributed to the campaigns of candidates for Lorain County (Ohio) prosecuting attorney. (Kilroy Dep., ECF No. 83-1, at 100-102.) Plaintiff has also attended numerous fundraising events for current Lorain County prosecuting attorney Dennis

Will.  (*Id.* at 21.)  Plaintiff wishes to continue attending such events and would like to contribute to the campaigns of current and future candidates for county prosecutor offices.  (*Id.* at 15.) Plaintiff claims to have withdrawn from such participation due to Ohio Rev. Code § 3599.45. That statute states:

> (A) No candidate for the office of attorney general or county prosecutor or such a candidate's campaign committee shall knowingly accept any contribution from a provider of services or goods under contract with the department of job and family services pursuant to the medicaid program of Title XIX of the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C. 301, as amended, or from any person having an ownership interest in the provider.
> . . .
> (B) Whoever violates this section is guilty of a misdemeanor of the first degree.

As this Court previously found in this case, the phrase "any person having an ownership interest in the provider" means *any* ownership interest, no matter how small.  (Opinion and Order, ECF No. 28, at 3-5.)  Thus, even though Plaintiff's ownership interest (20 shares of stock) in Target Corporation is *de minimis*, the statute effectively prohibits a candidate for state attorney general or county prosecutor from accepting any campaign contribution from Plaintiff. Indeed, Plaintiff testified that he has had campaign contributions refused due to his stock ownership, albeit *de minimis*, in Target Corporation.  (Kilroy Dep., ECF No. 83-1, at 16.)

Plaintiff is concerned about the possibility of placing Mr. Will's campaign in jeopardy by the mere appearance of a violation of Ohio Rev. Code § 3599.45.  (*Id*. at 17, 45-46, 76-77.) Plaintiff therefore indicates that he will refrain from attending Mr. Will's steak-fry fundraiser(s) and will not contribute to Mr. Will's campaign.  (*See id.*)

Plaintiff filed the instant action under the Civil Rights Acts of 1871, 42 U.S.C. § 1983. He alleges that Ohio Rev. Code 3599.45 violates his rights under the First and Fourteenth Amendments to the United States Constitution by chilling his political speech.  (Compl., ECF

2

No. 1, at ¶¶ 34-41.)  The lawsuit names Mr. Husted, in his official capacity as the Ohio Secretary of State, as the sole Defendant.  Under Ohio law, the Secretary of State is the state's chief election officer.  Ohio Rev. Code § 3501.04.  Ohio law also requires the Secretary of State to investigate and refer for prosecution violations of criminal law relating to elections.  Ohio Rev. Code § 3501.05(N)(1).  Plaintiff Kilroy therefore seeks a declaration that Ohio Rev. Code § 3599.45 is unconstitutional and an injunction barring Secretary Husted from enforcing the statute.  (Compl., ECF No. 1, at 12.)

Plaintiff Kilroy sought a preliminary injunction to prevent enforcement of Ohio Rev. Code § 3599.45 pending the disposition of this action on the merits.  (ECF No. 19.)  This Court stayed the disposition of Plaintiff's motion for preliminary injunctive relief pending the decision on the Defendant's Motion for Summary Judgment now before the Court.  (*See* ECF No. 87.)

## II.  Discussion

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

As an initial matter, Plaintiff contends that this Court should deny Secretary Husted's Motion for Summary Judgment out of hand for the Secretary's failure to comply with S.D. Ohio Local Rules 5.4(b) and 7.2(e).  (Pltf. Opp., ECF No. 83, at 2, 13, 34.)  Local Rule 5.4(b) requires a party to file deposition transcripts in this Court "if a party reasonably anticipates that they will be needed as evidence relating to a forthcoming motion or other proceeding."  Consistent with

3

this rule, Local Rule 7.2(e) provides that any evidence (including deposition transcripts) in support of a motion that is not already of record "shall be attached to the memorandum [in support of the motion] or included in an appendix thereto" or, in the case of deposition transcripts, be "timely filed with the Clerk." Though Secretary Husted cited to deposition testimony of Plaintiff Kilroy and the Secretary's campaign finance administrator, J. Curtis Mayhew, in his Motion for Summary Judgment, he failed either to file those deposition transcripts with the Court or attach the relevant deposition excerpts as exhibits to his Motion for Summary Judgment.

The apparent violation of the local rules notwithstanding, this Court does not find it necessary to reject Secretary Husted's Motion for noncompliance with Local Rules 5.4(b) and 7.2(e). Plaintiff Kilroy filed the deposition transcripts of Kilroy and Mayhew in connection with his opposition to summary judgment, thereby placing these evidentiary materials before the Court. The Court sees little reason to deny the Secretary's Motion for Summary Judgment based simply on the technical noncompliance with the Court's Local Rules when the evidence in question has been filed in the record. If Plaintiff Kilroy had not filed the transcripts relied upon by the Secretary, the Court may have viewed this situation differently. But in light of the record now before it, the Court finds it appropriate to proceed to the merits of Secretary Husted's Motion.

### A. The Eleventh Amendment and *Ex Parte Young*

In this case, Secretary Husted moves for summary judgment based solely on Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution provides simply: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

4

State, or by Citizens or Subjects of any Foreign State." Despite the text suggesting otherwise, the Eleventh Amendment has long been construed to bar suits initiated against a state by one of its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L. Ed. 842 (1890). The Eleventh Amendment also prohibits suits against state officials where the state is, in fact, the real party in interest, such as when a lawsuit prays for a remedy that would require a state officer to pay funds directly from the state treasury to compensate for wrongful acts of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

The Eleventh Amendment immunity granted to the states is subject to the well-recognized exception crafted in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Under the *Ex Parte Young* doctrine, the federal courts have jurisdiction over suits against state officers (in their official capacity) seeking *prospective* equitable relief to enjoin ongoing violations of federal law. *Id.* at 156. It is under the *Ex Parte Young* doctrine that Plaintiff Kilroy proceeds in this case, seeking equitable relief to declare Ohio Rev. Code § 3599.45 unconstitutional and to enjoin its enforcement by Secretary Husted in his capacity as Ohio's chief elections officer.

Secretary Husted argues that summary judgment on Eleventh Amendment grounds remains appropriate despite *Ex Parte Young*. For the *Ex Parte Young* doctrine to apply, there are two prerequisites that must be present: the defendant state official must (1) have "some connection with the enforcement of the act" and (2) "threaten" or be "about to commence" proceedings to enforce the act. *Ex Parte Young*, 209 U.S. at 155-56; *see also Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (reciting that *Ex Parte Young* applies when the complaint alleges an "ongoing violation of

5

federal" by state officers in their official capacities).[1]

## B.     "Some Connection" with Enforcement of Ohio Rev. Code § 3599.45

As to the first element of *Ex Parte Young*'s applicability, Secretary Husted contends that

he is not a proper defendant.  In making this argument, Husted points to the nature of Ohio Rev.

Code § 3599.45 as a criminal statute.  As such, Secretary Husted argues that his office is not

charged with enforcement of the statute because "only prosecutors (or the attorney general in

some rare circumstances) may bring criminal prosecutions."  (Mot. Summ. J., ECF No. 74, at 6.)

Driving home the point that local prosecutors are at the forefront of enforcing the statute, Husted

cites the deposition of his office's campaign finance administrator, J. Curtis Mayhew, who

testified the Secretary of State's Office has "never taken a look" at bringing a criminal

---

[1]In a Motion for Leave to file a surreply (which in many ways reads more like the surreply itself rather than the motion for leave to file one), Plaintiff Kilroy raised the specter of an Eleventh Amendment immunity waiver, arguing that "the Secretary failed to contest the . . . critical fact" that the Secretary actively participated in this case *and* a similar one in the Northern District of Ohio *on the merits*, thereby waiving Eleventh Amendment immunity.  (ECF No. 91, at 2.)  *See Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (holding that the state waived Eleventh Amendment immunity by its litigation conduct in engaging in discovery, seeking a judgment on the merits, and not raising the Eleventh Amendment until after an adverse judgment against it); *Hunter v. Hamilton Cnty. Bd. of Elections*, No. 1:10-cv-820, 2012 U.S. Dist. LEXIS 15745, at *11-*14 (S.D. Ohio Jan. 6, 2012) (finding waiver of Eleventh Amendment immunity when the defendants had engaged in extensive litigation of the case for more than one year, including taking an interlocutory appeal, before they ever raised the Eleventh Amendment issue) (citing *Ku*).  Plaintiff Kilroy went as far as to say that he raised the waiver issue "multiple times in his opposition to the Secretary's motion for summary judgment."  (ECF No. 91, at 1.)  This Court is puzzled as to how Kilroy can claim he raised the waiver issue in his opposition to the motion for summary judgment.  In point of fact, in his 36-page opposition brief, Kilroy did not argue once that the Secretary of State waived the Eleventh Amendment defense.  To the contrary, Kilroy devoted his brief to arguing the inapplicabilty of the Eleventh Amendment immunity *on the merits*.  In short, this Court deems Kilroy to have waived the waiver argument. In the same way that a movant's argument raised for the first time in a reply brief in support of summary judgment is waived, *see e.g. Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007), a nonmovant's argument is similarly waived by failing to raise it until a motion for leave to file a surreply.

prosecution for anyone's violation of Ohio Rev. Code § 3599.45 and that it is "probably more of an issue for a prosecutor to look into, rather than [for the] Secretary of State's office." (Mayhew Dep., ECF No. 83-14, at 82.) Secretary Husted further argues that his office's statutory role as an investigator is not enough to create any threat of enforcement given the fact that the ultimate prosecutorial decision rests with the local prosecutor in any case in which there is an alleged violation of the statute. (ECF No. 74, at 7.)

In response, Plaintiff Kilroy argues that Secretary Husted's interpretation of the "some connection with enforcement" element of *Ex Parte Young* is overly narrow. (Pltf. Opp., ECF No. 83, at 15.) All that *Ex Parte Young* requires is that the state officer have "some connection" with the enforcement of the legislative act alleged to be unconstitutional. (*Id.* at 15-16.) *See Ex Parte Young* at 157. And that standard is satisfied here, argues Kilroy, because the Ohio Revised Code places affirmative duties upon the Ohio Secretary of State when it comes to the enforcement of Ohio's election laws. On this point, the Court finds that Plaintiff Kilroy has the better of the argument.

Under Ohio law, the Ohio Secretary of State is the state's chief elections officer. *See* Ohio Rev. Code § 3501.04. As such, the Secretary has a variety of election-related duties imposed by law. *See State ex rel. Myles v. Brunner*, 120 Ohio St. 3d 328, 2008-Ohio-5097, at ¶ 11 (citing statutory provisions). Ohio statutory law also imposes upon the Secretary of State the affirmative duty to "investigate the administration of election laws, frauds, and irregularities in elections in any county, *and report violations of election laws to the attorney general or prosecuting attorney*, or both, for prosecution." Ohio Rev. Code § 3501.05(N)(1) (emphasis added). In furtherance of such duties to administer Ohio's election laws, the Secretary of State enjoys the power to administer oaths, issue subpoenas, and compel the production of evidence.

7

*Id.*, § 3501.05(DD).  Thus, as set forth in Ohio statutory law, the Ohio Secretary of State plays a role in the enforcement of all of the state's election laws, including laws that carry criminal penalties for their violation.

The Ohio Secretary of State's connection with the enforcement of Ohio's election laws is enough to satisfy *Ex Parte Young*.  Even if the Court accepts Secretary Husted's argument that the primary authority for enforcing Ohio Rev. Code § 3599.45 lies with individual prosecutors throughout the state (insofar as they are the ones who make the ultimate decision on whether to charge an offender), this enforcement hierarchy in Ohio is of no moment for purposes of applying *Ex Parte Young*.  The state officer's connection does not have to be the primary authority to enforce the challenged law.  *281 Care Comm. v. Arneson*, 638 F.3d 621, 633 (8th Cir. 2011).  It is sufficient if the state law grants the state officer some authority to act in furtherance of the challenged law.  *Id.* (noting the Minnesota Attorney General's authority to assist with prosecution, defend administrative decisions in civil court, and/or to file civil complaints under the challenged law).  The Ohio Revised Code contemplates that the Secretary of State play a role in the enforcement of all election laws, including laws that (like Ohio Rev. Code § 3599.45) carry criminal penalties.  *See* Ohio Rev. Code § 3501.05(N)(1) (stating that the Secretary of State "shall . . . report violations . . . for prosecution").

Accordingly, the Court finds that the first requirement for *Ex Parte Young*'s applicability is satisfied in this case: Secretary Husted is a state official that has "some connection" with the statute alleged to be unconstitutional in this case.

### C.    Enforcement of Ohio Rev. Code § 3599.45

Secretary Husted's status as a state official with "some connection" to enforcement of Ohio Rev. Code § 3599.45 does not necessarily strip him of Eleventh Amendment immunity in

this case.  As noted above, the *Ex Parte Young* exception to Eleventh Amendment immunity applies only to suits seeking prospective relief for an alleged "ongoing" violation of federal law. *See Verizon Md.*, 535 U.S. at 645; *see also Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003).  As to this requirement, the Supreme Court has explained:

> *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, *supra*, at 105 (quoting *Young*, *supra*, at 160). Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citation omitted).

*Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

Thus, besides a complaint suing the correct state official having "some connection" with enforcement of the challenged act, *Ex Parte Young* requires that the complaint be about the state official's *action*.  Indeed, in *Ex Parte Young* itself, the Supreme Court found federal jurisdiction lies to enjoin state officers who "are clothed with some duty in regard to the enforcement of the laws of the State *and who threaten and are about to commence proceedings*, either of a civil or criminal nature, to enforce" an unconstitutional act.  *Ex Parte Young*, 209 U.S. at 155-56 (emphasis added).  Seizing upon *Ex Parte Young*'s language about the parameters of the *Young* exception to Eleventh Amendment immunity, the Sixth Circuit Court of Appeals has likewise explained that "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional statute." *Children's Healthcare is a Legal*

*Duty, Inc. v. Deters*, 92 F.3d 1412, 1414, 1416 (6th Cir. 1996) ("*Children's Healthcare*"); *see also id.* at 1415 (emphasizing that *Ex Parte Young* abrogates immunity only "when a suit challenges the constitutionality of a state official's *action*").

It is this aspect of the *Ex Parte Young* doctrine that provides the more difficult hurdle for Plaintiff Kilroy to clear in order to sustain this lawsuit.  In particular, Secretary Husted relies heavily on *Children's Healthcare* to support his contention that summary judgment is appropriate here because there is no evidence to support the notion that anyone, much less his office, is threatening or about to commence proceedings to enforce Ohio Rev. Code § 3599.45. Secretary Husted argues, moreover, that Plaintiff Kilroy cannot establish any threat of enforcement against *Kilroy* in any event because the statute in question provides for criminal liability only against *candidates* for attorney general or county prosecutor.  (Mot. Summ. J., ECF No. 74, at 7.)

### 1.	*The Sixth Circuit's Decision in* Children's Healthcare

Secretary Husted relies on *Children's Healthcare* as one of the primary (if not *the* primary) pillars supporting summary judgment in his favor on Eleventh Amendment grounds.  In *Children's Healthcare*, a children's advocacy group and a father of two minor children sued, among others, the Attorney General of Ohio, alleging that certain provisions of Ohio Rev. Code §§ 2919.22(A) and 2151.03(B) were unconstitutional.  *Children's Healthcare*, 92 F.3d at 1413. The challenged statutes established exemptions from the duty to provide adequate care for children and from prosecution for failure to provide adequate care for persons who treat "by spiritual means" children within their care.  *Id.*  The plaintiff father alleged that his ex-wife, a Christian Scientist, did not allow their daughter to receive the medical treatment he believed necessary for a congenital kidney disease.  *Id.*  The plaintiffs in *Children's Healthcare* argued

10

that the statutory exemptions for treatment "by spiritual means" violated the Establishment Clause of the First Amendment and denied equal protection of the laws and due process of law to the class of children cared for by persons who fell within the statutory exemptions.  *Id.* at 1413-14.

The Sixth Circuit held that the Ohio Attorney General was entitled to Eleventh Amendment immunity from suit, notwithstanding the plaintiffs' attempt to invoke the *Ex Parte Young* doctrine.  Observing that courts "have not read *Young* expansively," the Sixth Circuit noted that *Young* does not apply "when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."  *Id.* at 1415 (collecting cases). And because the Attorney General did not "enforce" the allegedly unconstitutional statutes against the plaintiffs, the Sixth Circuit had no trouble finding the Ohio Attorney General immune from suit in *Children's Healthcare*: "What we have here is not action, but inaction, and *Young* does not apply.  The Attorney General did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act." *Id.* at 1416.

The Sixth Circuit also found two additional grounds for rejecting the plaintiffs' lawsuit in *Children's Healthcare*.  The Court observed that the case "also does not fall within the *Young* exception, because the plaintiffs do not seek to *enjoin* the enforcement of an allegedly unconstitutional statute."  *Id.*  Notably, the plaintiffs wanted certain statutory defenses to criminal liability *not* to be given effect.  Thus, the Sixth Circuit characterized the plaintiffs' lawsuit as turning *Young* "inside out" by asking the federal courts to "*permit* a broader enforcement of certain statutes by striking down those provisions of the statutes which prevent their enforcement with respect to persons against whom the plaintiffs believe enforcement is

11

proper."  *Id.*  Finally, the Sixth Circuit found that the Ohio Attorney General had "no connection" to the enforcement of the statutory exemptions challenged by the *Children's Healthcare* plaintiffs; Ohio law delegated that enforcement responsibility to the individual local prosecutors.  *Id.* 1416-17.  The Sixth Circuit therefore found the case akin to a situation in which plaintiffs sued an Attorney General who had never threatened to prosecute them and had no authority to do so — a situation that does not allow the plaintiffs to evade Eleventh Amendment immunity.  *Id.* at 1417 (citing *Sherman v. Community Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992)).

### 2. *Enforcement by Secretary Husted?*

Secretary Husted insists that there is no ongoing enforcement of Ohio Rev. Code § 3599.45 and therefore no basis upon which to apply the *Ex Parte Young* exception to Eleventh Amendment immunity.  In other words, Secretary Husted says this case is a case about *inaction* rather than action and that the case should therefore meet the same Eleventh Amendment bar that foreclosed the plaintiffs' lawsuit in *Children's Healthcare*.

Secretary Husted emphasizes that Plaintiff Kilroy can point to no evidence of enforcement that would suggest there is an ongoing threat of violation of his constitutional rights.  Indeed, in his deposition, Kilroy could point to no instance of Ohio Rev. Code § 3599.45 being enforced against anyone.  (Kilroy Dep., ECF No. 83-1, at 15, 22-23, 25, 90-91.)  Specific to the Secretary of State's office, Kilroy was not aware of the Secretary filing a complaint concerning a violation of Ohio Rev. Code § 3599.45.  (*Id.* at 25.)  Nor could Kilroy point to an instance in which Secretary Husted or his predecessor had even threatened to bring a charge against an individual or candidate for violating the statute.  (*Id.* at 90-92.)  And though Kilroy alleged that the campaign of Lorain County Prosecutor Dennis Will turned down a campaign

contribution from him because of Kilroy's ownership of stock in Target Corporation, Kilroy did

not know if Secretary Husted had informed the Will campaign that accepting Kilroy's

contribution would violate Ohio Rev. Code § 3599.45.  (*Id.* at 23-24.)   Rather than having

knowledge of actual enforcement efforts by the Secretary of State's office, Kilroy professed fear

that the Secretary of State *might* pursue candidates for violations in the future:

> So, you know, my fear is that you don't know what the secretary of state is going to
> do in the future because I have personal experience with filing campaign finance
> reports that you think were a dead issue and then two or three more years later they
> come back and, you know, on a – nitpick on minor technical issues.  So I don't see
> this as being any different.

(*Id.* at 25.)

Testimony from Mr. Mayhew, the Secretary of State's campaign finance administrator,

indicated that the Secretary's office had not done any investigative or enforcement action related

to Ohio Rev. Code § 3599.45.  (Mayhew Dep., ECF No. 83-14, at 90.)  Mayhew testified not

only that there was no ongoing enforcement efforts, but also that he could not recall (in his 19

years working for the Secretary of State's office) any instance in which the office took any

investigative or enforcement action concerning Ohio Rev. Code § 3599.45. (*Id.* at 103.)  Nor was

the Secretary of State's office aware of any efforts undertaken by a county prosecutor to charge

anyone with a violation of Ohio Rev. Code § 3599.45.  (*Id.* at 103-04.)

Even though the Court has found that Secretary Husted has "some connection with the

enforcement" of Ohio Rev. Code § 3599.45 for purposes of the *Ex Parte Young* exception to

Eleventh Amendment immunity, that fact "does not diminish the requirement that the official

threaten and be about to commence proceedings" to enforce the allegedly unconstitutional act.

*Children's Healthcare*, 92 F.3d at 1416 (citing *Ex Parte Young* at 155-56).  On the record before

this Court, there is simply no evidence to suggest that Secretary Husted is threatening

proceedings to enforce the Ohio Rev. Code § 3599.45, such that it can be said that Kilroy is seeking to enjoin an ongoing violation of federal law by the Secretary. The fact that Secretary Husted has some enforcement authority and *could* use the power of his office to investigate violations of Ohio Rev. Code § 3599.45 and *potentially* refer the fruits of his investigations to local prosecutors for criminal charges is insufficient to meet the standard required to invoke the *Ex Parte Young* exception to Eleventh Amendment immunity. *See Susan B. Anthony List v. Driehaus*, No. 1:10-cv-720, 2011 U.S. Dist. LEXIS 84000, at *29 (finding that Eleventh Amendment barred suit against Secretary Husted when there was "absolutely no evidence that Secretary Husted has in any way threatened to enforce any proceeding against Plaintiff" under the statutes challenged there). On the record before this Court, Plaintiff Kilroy's lawsuit appears more like one intended to *deter* enforcement of a statute rather than one to enjoin an ongoing enforcement. And suits brought against the State for such a deterrent purpose do not escape Eleventh Amendment immunity. *Papasan*, 478 U.S. at 277-78.

For his part, Plaintiff Kilroy makes much of the fact that Mr. Mayhew (in Kilroy's words) "changed his testimony" regarding the Secretary of State's policy of enforcing Ohio Rev. Code § 3599.45. (Deft. Opp., ECF No. 83, at 10.) In a March 2011 deposition taken in connection with *Lavin v. Husted*, 803 F. Supp. 2d 756 (N.D. Ohio 2011),[2] Mr. Mayhew testified that he had no reason to believe that the Secretary of State's Office would not enforce the statute.

_____

[2]In *Lavin*, the plaintiffs were physicians and Medicare providers who, like Plaintiff Kilroy here, sought a declaratory judgment that Ohio Rev. Code § 3599.45 violates the First and Fourteenth Amendments to the United States Constitution. *See Lavin*, 803 F. Supp. 2d at 757. The *Lavin* court granted summary judgment to Secretary Husted, finding no First Amendment infirmity. *See id.* at 761-65. Mr. Mayhew's deposition in the *Lavin* case was taken in March 2011 and again in this case in October 2011. The parties in this case stipulated that Mayhew's October 2011 deposition was a "continuation" of the March 2011 deposition. (Mayhew Dep., ECF No. 83-14, at 5-6.)

(Mayhew Dep., ECF No. 83-18, at 7-8.)  In what Kilroy calls "a testimonial Salchow in the midst of litigation" (ECF No. 83, at 12), Mayhew testified seven months later during the continuation of his deposition that he would not recommend that Secretary Husted enforce the statute due to Mayhew's "discomfort" with the statute's breadth and the uncertainty over how his office would go about enforcing it.  (Mayhew Dep., ECF No. 83-14, at 94-100.)  Even with that so-called "changed testimony," however, Mayhew acknowledged the potential risk of future enforcement at the local prosecutor level, by Secretary Husted's office, or by a future Ohio Secretary of State.  (*Id.* at 46, 108.)

Though Kilroy places great emphasis on the equivocal nature of Mayhew's testimony regarding the potential enforcement of Ohio Rev. Code § 3599.45 by the Secretary of State's office, such equivocation is insignificant in this Court's Eleventh Amendment analysis.  To fall under the *Ex Parte Young* exception, the plaintiff must be seeking prospective relief for a state official's ongoing violation of federal law — that is, the state official must "threaten and be about to commence proceedings" to enforce the allegedly infirm law.  *Children's Healthcare*, 92 F.3d at 1416.  Even assuming that Kilroy could establish the unconstitutionality of Ohio Rev. Code § 3599.45, the evidence on the record before the Court does not show that Secretary Husted is engaging in any such imminent commencement of proceedings that could properly be characterized as an ongoing violation of federal law that is addressable under *Ex Parte Young*. The Court therefore finds merit in Secretary Husted's Eleventh Amendment argument.

### 3.   *Cases Distinguishing* **Children's Healthcare** *Are Not Persuasive.*

The Court is mindful of the fact that cases from other jurisdictions have distinguished or explained the meaning behind the Sixth Circuit's requirement that the state official "threaten and

be about to commence proceedings" in order for the *Ex Parte Young* doctrine to apply. *Children's Healthcare* at 1416.  In rejecting arguments by state officers that a genuine or present threat of enforcement is required to invoke the *Ex Parte Young* exception to Eleventh Amendment immunity, courts have explained that the threat of future enforcement is relevant "only to the extent it shows that the plaintiff is suing the correct state official and is seeking prospective relief for future harms."  *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 915 (E.D. Wisc. 2002); *accord National Audubon Soc'y v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002) (declining to "read additional 'ripeness' or 'imminence' requirements into the *Ex Parte Young* exception"); *Summit Medical Assocs. v. Pryor*, 180 F.3d 1326, 1340 n.11 (11th Cir.1999) (distinguishing *Children's Healthcare* on same basis and finding it inapplicable to action against state attorney general seeking to declare criminal statute unconstitutional).  Thus, according to these courts, the "threaten and be about to commence proceedings" inquiry comes into play only when determining whether the correct state official is being sued for prospective relief.  Indeed, the Ninth Circuit described *Children's Healthcare* as being "concerned with the question of 'who' rather than 'when.'" *National Audubon Soc'y*, 307 F.3d at 846; *see also Deida* at 915 ("If state law clearly empowers the named defendant to enforce the statute and the plaintiff seeks only prospective relief, then whether the defendant has actually threatened the plaintiff with enforcement is irrelevant.").

While the view of these courts makes some sense, this Court declines to circumscribe the *Children's Healthcare* explication of the *Ex Parte Young* exception in such a way.  As noted previously, the Sixth Circuit found Eleventh Amendment immunity applicable in *Children's Healthcare* for three distinct reasons: the Court found (1) the Ohio Attorney General "did not threaten to commence and was not about to commence proceedings against the plaintiffs,"

*Children's Healthcare* at 1416, (2) the case did not fall within the *Ex Parte Young* exception anyway because the plaintiffs were not seeking to "enjoin the enforcement of an allegedly unconstitutional statute," *id.,* and (3) Ohio law did not delegate enforcement of the allegedly unconstitutional statutes to the Ohio Attorney General, *id.* at 1416-17.  That the Court found reasons (1) and (3) to be separate and distinct grounds for rejecting the plaintiffs' lawsuit militates against interpreting the "threaten and be about to commence proceedings" requirement stated in *Children's Healthcare* in the manner that the *Deida*, *National Audubon Soc'y*, and *Summit Medical* courts have.

If the "threaten and be about to commence proceedings" requirement described in *Children's Healthcare* were merely part and parcel of the analysis of whether the proper state official was being sued for prospective relief, then there would have been no need for the Sixth Circuit to note the Attorney General's lack of true enforcement authority as a *separate* reason for its decision.  But rather than use the presence or absence of imminent enforcement by the Attorney General as an indicator that the Attorney General lacked "some connection with the enforcement of the act," the Sixth Circuit treated the circumstance that the Attorney General "did not threaten to commence and was not about to commence proceedings" as a separate inquiry unto itself. *See Children's Healthcare* at 1416-17.

This Court is, of course, bound to follow Sixth Circuit precedent.  And in this case, the Court finds that Plaintiff Kilroy's lawsuit cannot escape the Eleventh Amendment net, as cast by *Children's Healthcare*.  The Sixth Circuit's analysis of the *Ex Parte Young* exception to Eleventh Amendment immunity in *Children's Healthcare* appears to be good law in this Circuit and the parties have pointed to no Sixth Circuit or Supreme Court case that overrules or discredits it.  Indeed, less than one year ago, another judge of this Court applied *Children's*

*Healthcare* to bar on Eleventh Amendment grounds a suit against Secretary Husted when there was no evidence that the Secretary had threatened to enforce any of the election statutes that the plaintiffs challenged as unconstitutional.  *See Susan B. Anthony List, supra*, 2011 U.S. Dist. LEXIS 84000, at *29 (Black, J.).  This Court concludes that Secretary Husted is likewise immune from Plaintiff Kilroy's lawsuit under the Eleventh Amendment.

> **D.** **Impact of *Zielasko v. Ohio* and First Amendment Interests upon Eleventh Amendment Immunity.**

Plaintiff Kilroy argues that Secretary Husted's reliance on *Children's Healthcare* is misplaced and that the controlling precedent here is *Zielasko v. Ohio*, 873 F.2d 957 (6th Cir. 1989).  (Pltf. Opp., ECF No. 83, at 21-25.)  Plaintiff Kilroy argues further that Ohio Rev. Code § 3599.45's "threat of criminal penalty" infringing First Amendment rights suffices for a "credible threat of enforcement" for purposes of abrogating Eleventh Amendment immunity under *Ex Parte Young*.  (*Id.* at 25-32.)

> **1.** **Zielasko v. Ohio *Does Not Govern This Case.***

In *Zielasko*, an incumbent state-court judge (Zielasko) and a voter (Bowman) who supported his reelection sued the Ohio Secretary of State (among others) for declaratory and injunctive relief to enjoin enforcement of Ohio's constitutional prohibition on any person being elected for judge if he or she would be 70 years of age when he or she would assume the office. *Zielasko* at 958.  In order to run for office, Zielasko would have had to file a "declaration of candidacy" form under Ohio law stating that he was a "qualified candidate" for the office he was seeking.  *Id.* at 959.  Signing the form, however, would have subjected Zielasko to criminal penalty for election falsification because his age prohibited him from assuming the office for which he sought election.  *Id.*  The Sixth Circuit rejected the State of Ohio's argument that there

was no "actual case or controversy" because Zielasko had not actually circulated a nominating petition for his candidacy.  *Id.* at 958-59.  Because Zielasko would have filed a declaration of candidacy but for the fear of criminal penalty for election falsification, the Court found the requisite injury for purposes of establishing a justiciable controversy within the meaning of Article III of the United States Constitution.  *Id.* at 959.  The Court further held that Bowman had a justiciable claim "predicated upon" Zielasko's because Bowman was "precluded from advancing Zielasko's candidacy."  *Id.*

In addition to finding a justiciable controversy, the *Zielasko* court also addressed the argument that the Eleventh Amendment barred the lawsuit.  The entirety of the Court's Eleventh Amendment analysis was as follows:

> The district court also found that Ohio was not entitled to dismissal based on eleventh amendment immunity. The court noted that the eleventh amendment does not necessarily bar suits brought in federal court seeking prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908). Because Zielasko and Bowman seek to enjoin the future enforcement of a state constitutional provision they wished declared unconstitutional, the eleventh amendment does not apply.

*Id.*[3]  Notwithstanding the absence of a detailed Eleventh Amendment analysis, Plaintiff Kilroy urges the Court to find that *Zielasko* is the controlling precedent because it is "similar in all relevant aspects" to his case.  (Pltf. Opp., ECF No. 83, at 23.)

---

[3]Rather conspicuously, the Court's analysis appears erroneous on its face, for it seems to hold that *the State of Ohio* was not entitled to Eleventh Amendment immunity.  It is elementary, however, that the *Ex Parte Young* exception to Eleventh Amendment immunity applies only to *state officials* sued in their official capacity; the doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (citing *Cory v. White*, 457 U.S. 85, 90-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982)).  This Court therefore views this passage of *Zielasko* as simply a case of inartful drafting, with the Court of Appeals likely intending to speak to *Ex Parte Young*'s applicability to the case against the Secretary of State in his official capacity.

The Court views *Zielasko* as a thin reed upon which to rest a conclusion that Plaintiff Kilroy should be allowed to proceed under the *Ex Parte Young* doctrine.  Though *Zielasko* itself offers little in terms of its own Eleventh Amendment analysis, the Sixth Circuit in *Children's Healthcare* explained what it meant in *Zielasko* — and why the case was distinguishable there. The Sixth Circuit noted that the *Zielasko* case was allowed to sidestep Eleventh Amendment immunity because of the judge's "'real and immediate (not merely conjectural or hypothetical) harm of criminal penalty'" associated with the declaration of candidacy he would be required to file under the threat of criminal penalty for election falsification.  *Children's Healthcare*, 92 F.3d at 1416 n.10 (quoting *Zielasko* at 959).  Because the Court could not find anything "analogous about the plaintiffs" in *Children's Healthcare*, it could not find that there existed any threat of proceedings to enforce an allegedly unconstitutional act.  *Id.* at 1416 and n.10.

The Sixth Circuit's explanation of *Zielasko* cuts against, not in favor of, Plaintiff Kilroy's ability to invoke *Ex Parte Young*.  The distinguishing factor for jurisdiction existing in *Zielasko* was the "real and immediate threat" of criminal penalty.  The record before the Court does not show any such "real and immediate threat" here.  In the final analysis, there was little question of ongoing enforcement of the Ohio constitutional provision challenged in *Zielasko*.  The same cannot be said for Ohio Rev. Code § 3599.45 here.

Moreover, this Court finds it significant that the "real and immediate threat" of criminal penalty was present in *Zielasko* because the judge himself (Zielasko) was a plaintiff.  In this case, while Plaintiff Kilroy alleges himself stifled by Ohio Rev. Code § 3599.45's prohibition on a prosecutor or attorney general candidate receiving campaign contributions from him, it is *not Plaintiff Kilroy who would be subject to prosecution* if the statute were enforced.  By its terms, the statute provides for misdemeanor criminal liability only for the *candidate* (or the candidate's

campaign committee). *See* Ohio Rev. Code § 3599.45(A). Thus, even if there were some real threat of enforcement present, Plaintiff Kilroy would not be the person threatened by it.

On this point, Plaintiff Kilroy is quick to observe that the Sixth Circuit decision in *Zielasko* did not differentiate between the claim of the judge and that of the voter. (Pltf. Opp., ECF No. 83, at 23.) Indeed, *Zielasko* did not find the voter's (Bowman's) suit to be barred by the Eleventh Amendment and allowed her claims to proceed to the merits along with Judge Zielasko's. *Zielasko*, 873 F.2d at 959. Plaintiff Kilroy therefore argues that the fact that the criminal penalty in Ohio Rev. Code § 3599.45 may not apply to him does not pose an Eleventh Amendment bar.

While Plaintiff Kilroy may be right about the voter's claims surviving Eleventh Amendment immunity in *Zielasko*, the Court does not find that *Zielasko* necessarily stands for the proposition that Kilroy can proceed here. *Zielasko* does not speak directly to the basis for allowing Bowman to proceed with her claims. But the Court finds it significant that the judge was a party plaintiff in that case and established (at least to the satisfaction of the Sixth Circuit) a "real and immediate" threat of criminal prosecution against *him* if he proceeded with his declaration of candidacy. *Zielasko*, 873 F.2d at 959. As the Sixth Circuit noted in its opinion, Bowman's case was "predicated upon this controversy" (*i.e.*, the threat of prosecution faced by the judge). *Id.* Given that the Court found Bowman's claims were "predicated upon" those of an actual plaintiff who faced the threat of prosecution, the Court may have found the *Ex Parte Young* exception applicable to the action as a whole. This Court therefore cannot say that *Zielasko* is firm precedent for the proposition that a person *not* subject to criminal penalty under a challenged statute can proceed under *Ex Parte Young*.

### 2.     *First Amendment Chill and the Eleventh Amendment*

Plaintiff Kilroy also argues that the prospect of his First Amendment free-speech rights being chilled by Ohio Rev. Code § 3599.45 should counsel against applying Eleventh Amendment immunity as a bar to his constitutional challenge.  Noting that standing requirements are "relaxed" in First Amendment cases, Plaintiff contends that "the requirement to establish a threat of enforcement is no stricter in the Eleventh Amendment context."  (Pltf. Opp., ECF No. 83, at 25.)  In other words, Plaintiff asks this Court to decide that a pre-enforcement challenge to a statute that allegedly infringes upon First Amendment rights should not be barred by the Eleventh Amendment because of the chilling effect the statute has upon expressive activity.  (*Id.* at 26-27.)

While this Court acknowledges the importance of the First Amendment considerations that Plaintiff Kilroy posits, the Court cannot say that such considerations undercut the applicability of Eleventh Amendment immunity here.  Though Plaintiff cites federal court decisions that stand for the proposition that the same rules that govern standing and justiciability should apply in the Eleventh Amendment context,[4] the Court finds those cases inconsistent with the Sixth Circuit's application of *Ex Parte Young*.  The Sixth Circuit adheres to the notion that the *Ex Parte Young* exception to Eleventh Amendment immunity includes the "requirement that the official threaten and be about to commence proceedings." *Children's Healthcare*, 92 F.3d at 1416.  Unless and until the Sixth Circuit (or the Supreme Court) imposes a First Amendment rule that relaxes the *Ex Parte Young* requirements, this Court will not do so.

Nor is the Court persuaded that allowing Secretary Husted to enjoy Eleventh Amendment

---

[4]*See Deida*, *supra*, 192 F. Supp. 2d at 915-16; *ACLU v. Johnson*, 4 F. Supp. 2d 1024, 1027-29 (D.N.M. 1998), *aff'd*, 194 F.3d 1149 (10th Cir. 1999); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002).

immunity in this case would "leave Mr. Kilroy without a remedy."  (Pltf. Opp., ECF No. 83, at 33.)  Kilroy argues that he would be "deprived of any relief for violations of his First Amendment rights" if this suit is barred by the Eleventh Amendment because "were he to wait for criminal proceedings to commence," *Younger* abstention would then bar his suit.  *See Younger v. Harris*, 401 U.S. 37, 53-54, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) (precluding a federal court from granting injunctive relief from an allegedly unconstitutional state statute that is the subject of ongoing state criminal proceedings to enforce it).  Despite Kilroy's protestations to the contrary, the Court views this scenario as an abstract, if not unfounded, fear.  Were criminal proceedings to commence, they would *not* be against *Plaintiff*: As noted previously, the statute criminalizes only the candidate's (or the campaign committee's) *receipt* of contributions from a Medicaid provider or someone with an ownership interest in a Medicaid provider.  *See* Ohio Rev. Code § 3599.45(A).

If and when the statute is ever enforced against a candidate for attorney general or county prosecutor, Plaintiff Kilroy might find himself in better position to challenge the statute as an ongoing infringement of his First Amendment rights.  After all, in that hypothetical scenario, Plaintiff Kilroy could theoretically allege something that the Court does not find on the record before it here — ongoing enforcement.  While the Court will not endorse Plaintiff Kilroy's ability to maintain that hypothetical future challenge against all jurisdictional barriers, it would seem unlikely that *Younger* would be one of those barriers.

### III.  Conclusion

For the foregoing reasons, the Court concludes that Secretary Husted is entitled to Eleventh Amendment immunity in this case.  The Defendant's Motion for Summary Judgment

(ECF No. 74) is therefore **GRANTED** and final judgment shall be entered in favor of the

Defendant.  Plaintiff Kilroy's Motion for Preliminary Injunction (ECF No. 19) is **DENIED AS**

**MOOT**.

       **IT IS SO ORDERED**.

                                     **_____/s/ Gregory L. Frost_____**
                                     **GREGORY L. FROST**
                                     **UNITED STATES DISTRICT JUDGE**